# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case NO. 09-cr-503 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| MARTABIAN PATTERSON, ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant Martabian Patterson's motion to suppress [14] a firearm that was recovered at the time of his arrest. For the reasons stated below, the Court respectfully denies Defendant's motion [14].

## I.  Background[1]

On April 14, 2009, a warrant was issued for the arrest of the Defendant on charges of bank robbery. The next day, Defendant's parents informed federal agents that Defendant was staying at his girlfriend's apartment. Defendant's girlfriend, Iesha Kelly, leased a two-bedroom apartment located at 3719 West Arthington, 2nd Floor, in Chicago, Illinois. The apartment was approximately 500-600 square feet and contained two bedrooms that were immediately adjacent to the living room.

That same day, April 15, 2009, the federal agents travelled to Ms. Kelly's apartment in an attempt to arrest the Defendant. Upon arriving at the apartment, agents knocked on the door and announced their office. There was no immediate answer at the door, but the agents heard noises in the apartment, so they continued to knock. The agents then observed Defendant looking out

---

[1] The relevant factual background is largely undisputed and is taken from the affidavits of Defendant and Iesha Kelly attached to the motion to suppress and the affidavit of Special Agent Thomas Weber attached to the Government's brief in opposition. To the extent that the facts are in dispute, for purposes of its consideration of this motion the Court has accepted Defendant's version of the events. Most significantly, the Court assumes that Ms. Kelly did not consent to a search of her apartment.

of the front bedroom window, after which time the agents attempted to force open the door with a battery ram.

As agents were attempting to force open the door, Defendant opened the door. The agents immediately placed Defendant in handcuffs and began to conduct a search for other occupants or weapons. They found Ms. Kelly in the rear bedroom. In response to the agents' question about whether there were any weapons in the apartment, Ms. Kelly answered, "No, at least not any that I know of." In the front bedroom, where the Defendant had been observed at the window, agents saw a full-size closet with its door open. While looking in the closet, the agents saw a long object tightly wrapped in a sheet on a shelf. They noticed three to five inches of a gun barrel protruding from the sheet. Inside the sheet, the agents found an AK-47 assault rifle. The total time that elapsed between the agents' entry in the house and the discovery of the rifle was a minute or less.

## II.    Analysis

Defendant has moved to suppress the firearm found in the search incident to his arrest. Relying primarily on *Arizona v. Gant*, 129 S. Ct. 1710 (2009), Defendant contends that the search was improper because he had been secured and removed from the apartment and therefore presented no threat to the agents when the search commenced. Defendant also argues that the firearm was not found in plain view and that Ms. Kelly did not give the agents consent to search the apartment.

In response, the Government first contends that Defendant has failed to establish that he has standing to assert a Fourth Amendment interest in Ms. Kelly's apartment. Additionally, the Government submits that the search was a protective sweep, which is a valid exception to the Fourth Amendment warrant requirement. The Government further contends that the rifle was

validly seized because it was in plain view and thus subject to the plain view doctrine. Finally, the Government asserts that Ms. Kelly consented to the search of her apartment.

The Fourth Amendment protects the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. Amend. IV. Among other protections, the Fourth Amendment generally prohibits police and other government agents from searching homes without a warrant. *Kyllo v. United States*, 533 U.S. 27, 31 (2001). However, there are exceptions to that protection, one of which is the protective sweep. *Maryland v. Buie*, 494 U.S. 325, 331 (1990). In setting forth the parameters of that exception, the Supreme Court has explained that officers may, incident to arrest and "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id*. at 334. A valid protective sweep "lasts no longer than is necessary to dispel the reasonable suspicion of danger." *Id*. at 335-36. "The justification for a protective sweep is to protect the safety of police officers, who have an interest in ensuring their safety when they lawfully enter a house. That interest justifies their ensuring that the dwelling does not harbor another person who is dangerous and who unexpectedly could launch an attack." *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 627-28 (7th Cir. 2008).

The inquiry into "whether a protective sweep was reasonable is necessarily a very fact-specific one." *Leaf v. Shelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005). Here, the uncontested facts establish that the agents heard noises coming from inside the apartment and saw Defendant in the front bedroom of the apartment prior to the arrest. Upon entering the apartment, the agents arrested Defendant and found Ms. Kelly in the rear bedroom. Although Defendant was quickly

secured,[2] Ms. Kelly gave an equivocal answer to the agents' question about whether there were any weapons in the apartment. Those facts, coupled with the agents' knowledge that one of the participants in the bank robbery remained at large (see Weber Aff. ¶ 8), gave rise to a "reasonable suspicion of danger" justifying a protective sweep of the apartment, including closets, to dispel the suspicion. *Buie*, 494 U.S. at 335-36. And given the size of the apartment and the absence of any dispute that (i) the bedrooms were adjacent to the living room in which Defendant was arrested, (ii) Defendant himself was observed by the agents in the front bedroom, and (iii) the protective sweep took less than a minute to complete, the Court concludes that the agents acted reasonably and consistently with the *Buie* and applicable Fourth Amendment jurisprudence.

Defendant contends that under *Gant* a protective sweep was not warranted because he was removed from the apartment before the sweep commenced. In *Gant*, the Supreme Court held that after a defendant has been arrested and removed from his vehicle, a search of the vehicle is not reasonable because the defendant is not within reach of any weapons that may be inside the vehicle. 129 S.Ct. at 1723. The Court is not persuaded by the attempt to analogize this case to *Gant*. Another court in this district recently opined that *Gant* is limited "to searches of vehicles incident to the arrest of the vehicle's recent occupant." *United States v. Harris*, 2009 WL 3055331, at *4 (N.D. Ill. Sept. 21, 2009); *cf. Gant*, 129 S. Ct. at 1721 (citing *Buie* as an example of the "established exceptions to the warrant requirement" and in support of the proposition that there may be "circumstances in which safety or evidentiary interests would justify a search"). Moreover, even if *Gant* is not so strictly limited, there are sound reasons for

---

[2] Whether Defendant was still in the living room or had been removed to the front porch does not affect the analysis, for a protective sweep is justified not only to protect officers or agents from the actions of the arrestee, but also from the potential danger posed by others on the scene. See *Buie*, 494 U.S. at 334; *Peals*, 535 F.3d at 627-28.

4

distinguishing the risk to officers and agents effectuating an arrest in an apartment or home from those who are making an arrest of the driver or occupant of a vehicle. As the Supreme Court and the Seventh Circuit have stressed, protective sweeps are justified "as a precautionary matter" (*Buie*, 494 U.S. at 334) to ensure that a "dwelling does not harbor another person who is dangerous and who unexpectedly could launch an attack." *Peals*, 535 F.3d at 627-28. The same concerns generally are not present where the arrestee is removed from an automobile, as all occupants of the automobile ordinarily are visible to the officers or agents. The facts of this case plainly fit within the holding and rationale of *Buie* (and its progeny), not *Gant*. See *Leaf*, 400 F.3d at 1087 (noting that the circumstances of the particular encounter must be "assessed carefully in light of the overarching policy concerns articulated in *Buie* and in its first cousins, *Terry* and *Long*," including "a proper regard for the safety of police officers").

For the reasons stated above, the Court concludes that the agents acted reasonably and lawfully in conducting a protective sweep of Ms. Kelly's apartment, including the closets, to look for other individuals and weapons. Although the firearm was wrapped in a sheet on the closet shelf, there is no dispute that part of the barrel protruded from the sheet and any trained law enforcement agent would be familiar with what a gun barrel looks like. In short, the AK-47 was found during a properly conducted protective sweep and therefore should not be suppressed.

In view of that conclusion, the Court need not consider the Government's standing argument or the dispute between the parties concerning whether Ms. Kelly consented to a search of her apartment. Finally, because the Court largely has relied on undisputed facts, and has accepted Defendant's version where there are disputes – for example, concerning whether Defendant was in the living room or on the porch during the protective sweep and whether Ms. Kelly consented to a search of her apartment – the Court concludes that an evidentiary hearing is
5

not necessary in this instance.  See *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) (holding that no evidentiary hearing was required where "the court relied upon [Defendant's] version of the events surrounding the search and other facts that [Defendant] did not contest"); *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998) (explaining that "evidentiary hearings on motions to dismiss are not granted as a matter of course"); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("a district court [is] obliged to hold a hearing only if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome").

**III.  Conclusion**

For the reasons stated above, Defendant's motion to suppress [14] respectfully is denied.

Dated:  October 26, 2009

_____
Robert M. Dow, Jr.
United States District Judge